UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NATASHA HARDIAL,

               Plaintiff,

  – against –

EMBLEMHEALTH, INC. and PANSY
McRAE,

              Defendants.

**MEMORANDUM, ORDER
AND JUDGMENT**

14-CV-4968

**PARTIES**

Natasha Hardial

EmblemHealth, Inc.
Pansy McRae

**APPEARANCES**

Justin L. Heiferman
The Kasen Law Firm PLLC
136-20 38th Ave
Ste 3A-105
Flushing, NY 11354
Tel: 718-888-9545
Fax: 718-690-3865
Email: justin@heifermanlaw.com

Michael C. Schmidt
Cozen O'Connor
277 Park Avenue
New York, NY 10172
Tel: 212-453-3937
Fax: 866-736-3682
Email: mschmidt@cozen.com

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I.   Introduction ..................................................................................................................3

II.  Facts .............................................................................................................................3

    A.   Plaintiff's Employment and Salary..................................................................3

    B.   Plaintiff's Performance Reviews, Formal Warnings,
         and Performance Improvement Plans ...............................................................3

III. Procedural History .......................................................................................................6

IV. Plaintiff's Claims .........................................................................................................7

    A.   Salary and Promotions......................................................................................7

    B.   Work Assignments ...........................................................................................9

    C.   Comments Believed to be Derogatory by Plaintiff ..........................................9

V.  Law ..............................................................................................................................10

    A.   Summary Judgment Standard .........................................................................10

    B.   Title VII ..........................................................................................................11

         1.   Disparate Treatment ...........................................................................11

         2.   Retaliation ..........................................................................................13

    C.   Limitations Period ..........................................................................................14

    D.   Equal Pay Act .................................................................................................16

VI. Application of Law to Facts .......................................................................................17

    A.   Defendant Pansy McRae ................................................................................17

    B.   Title VII Disparate Treatment Claims............................................................18

         1.   Plaintiff fails to make a *prima facie* case .........................................18

         2.   Defendants Offer a Non-Discriminatory Rationale
             that Plaintiff Cannot Refute........................................................22

    C.   Title VII Retaliation Claim.............................................................................24

    D.   Equal Pay Act Claim ......................................................................................25

VII. Conclusion.................................................................................................................26

## I.    Introduction

Plaintiff Natasha Hardial, a woman of Guyanese-Indian descent, was an employee of defendant EmblemHealth, Inc., a health insurance company.  She sues EmblemHealth and Pansy McRae, a senior supervisor at EmblemHealth, for: race and gender discrimination under Title VII of the Civil Rights Act of 1964; violations of the Equal Pay Act; and retaliation under Title VII of the Civil Rights Act of 1964.

Defendants move for summary judgment dismissing all claims.  The motion is granted.

## II.   Facts

### A.    Plaintiff's Employment and Salary

Plaintiff began working for EmblemHealth in July 2007 as a "G&A [Grievance & Appeals] Analyst" in the company's Grievance & Appeals Department.  Pl.'s Response to Defs.' Statement of Facts, Apr. 11, 2016, ECF No. 26-1 ("Pl.'s 56.1 Resp."), at ¶ 1.  Her title was changed to "G&A Specialist" in January 2010, but her job remained the same.  *Id.* at ¶¶ 2, 10; Hr'g Tr., June 21, 2016, at 12:2-15.  Plaintiff remained a "G&A Specialist" until she left the company in May 2015.  Pl.'s 56.1 Resp. at ¶¶ 2, 10.

Plaintiff's salary at the end of 2008 was $42,425.  Her salary at the end of 2013 was $51,547.  She received bonuses in 2009, 2012, 2013, and 2014.  Decl. of Justin L. Heiferman, Apr. 11, 2016, ECF No. 26-3 ("Heiferman Decl."), at Ex. C (Salary Chart, D-0388 – D-0391).

### B.    Plaintiff's Performance Reviews, Formal Warnings, and Performance Improvement Plans

Plaintiff's work was found by her supervisors to be inadequate on a number of occasions. She received a number of unsatisfactory performance reviews, formal warnings, and performance improvement plans.  But, at other times, her work was commended.

3

On December 28, 2007, plaintiff's immediate supervisor signed her 2007 performance review, indicating a "good" rating.  This review was signed by plaintiff's Director, Tanya McCray-Hyppolite, on January 2, 2008.  Heiferman Decl. at Ex. A (2007 Performance Evaluation, P-0035 – P-0043); Hr'g Tr., June 21, 2016, at 14:17-21. The following month, Pansy McRae (as plaintiff's Director) and an Officer of the company, David Abernethy, signed a revised performance review, indicating a "needs improvement" rating.  Heiferman Decl. at Ex. A (2007 Performance Evaluation, P-0044 – P-0055); Hr'g Tr., June 21, 2016, at 16:13-14.  The two reviews are similar, but the second one has some additional comments and several individual ratings were changed from "good" to "needs improvement." *Compare* Heiferman Decl. at Ex. A (2007 Performance Evaluation, P-0035 – P-0043) *with id.* (2007 Performance Evaluation, P-0044 – P-0055).  Defendants contend that the first review was only a draft.  Hr'g Tr., June 21, 2016, at 15:4-8.

Plaintiff received an overall "strong performance" rating on her 2008 performance review, and an overall "needs improvement" rating on her 2009 and 2010 performance reviews. Pl.'s Mem. of Law in Opp'n of Defs.' Mot. for Summ. J., Apr. 11, 2016, ECF No. 26 ("Opp'n Br."), at 3-4; Collection of Performance Reviews, filed June 21, 2016, ECF No. 37 ("Performance Reviews").

On March 18, 2009, plaintiff received a formal warning for tardiness and a first-quarter evaluation that indicated she was "not meeting the expectations of a Grievance and Appeal Analyst."  Decl. of Tanya McCray-Hyppolite in Supp. of Mot. for Summ. J., Feb. 5, 2016, ECF No. 22 ("McCray-Hyppolite Decl."), at Ex. B (Mar. 18, 2009 Memorandum).  On May 18, 2009, plaintiff received a second formal warning about the lack of quality in her work.  *Id.* at Ex. C (May 18, 2009 Memorandum).

4

Plaintiff was suspended for two days in June 2009 due to continued problems with tardiness. *Id.* at Ex. D (June 17, 2009 notice of suspension).

In March 2010, plaintiff was placed on a 60-day Improvement Plan by Willie Horne, her immediate supervisor. According to the memorandum informing plaintiff of the plan, this action was taken as a result of her conducting late investigations of her files, submitting late physician forms, having a file that went over the 30-day threshold for closing, having errors in files that were reviewed in an audit, and leaving cases open at the end of the work day. Heiferman Decl. at Ex. A (Memo re: Yearly Progression To Date, P-0056 – P-0058).

In response to the March 2010 criticisms, plaintiff, purportedly at the suggestion of Human Resources, wrote a memorandum to Mr. Horne, complaining that she had consistently made her supervisors aware of her "overwhelming workload" and that there were extenuating circumstances in the first part of 2010 that prevented her from staying past 5 p.m. She recounted a meeting held with Mr. Horne to discuss her placement on the performance improvement plan. According to plaintiff, of the 20 files identified in Mr. Horne's memo as late, it was determined that 11 were investigated in time. Plaintiff also pointed out that of the seven files that allegedly had late physician forms, one was Ms. Werner's file, not hers. *Id.* at Ex. A (Memo re: Performance Improvement Plan, P-0059).

The performance improvement plan was extended beyond the original 60 days, with plaintiff being evaluated by management as showing some signs of melioration but still needing further progress. McCray-Hyppolite Decl. at Ex. E (Aug. 30, 2010 Memorandum). She received another "needs improvement" rating on a mid-year performance evaluation. Compl., Aug. 21, 2014, ECF No. 1 ("Compl."), at ¶ 36. The continuing performance improvement plan was discontinued at the end of October 2010. *Id.* at ¶ 37.

5

She received "consistently meets performance" ratings on her 2011 mid-year and year-end reviews, and 2012 mid-year and end-year reviews. *See* Performance Reviews.

On her 2013 mid-year review, plaintiff received another "needs improvement" rating. Opp'n Br. at 3-4; Performance Reviews.

She was placed on another performance improvement plan in August 2013, just before she filed a charge of discrimination with the EEOC. McCray-Hyppolite Decl. at Ex. F (Nov. 19, 2013 Memorandum).

On her 2013 year-end review and 2014 mid-year review, plaintiff received a rating of "meets expectations." *See* Performance Reviews.

She received a "needs improvement rating" on her 2014 year-end review. *See id.*

On September 29, 2014, plaintiff received another formal warning for her handling of a specific case file. McCray-Hyppolite Decl. at Ex. G (Sept. 29, 2014 Interoffice Memorandum).

In January 2015, plaintiff was placed on another performance improvement plan. *Id.* at Ex. H.

## III.    Procedural History

Plaintiff filed a complaint with the EEOC on August 13, 2013. Pl.'s 56.1 Resp. at ¶ 7. She received a right to sue notice, and commenced the present action on August 21, 2014. *Id.* at ¶ 9.

The complaint includes four causes of action. The first is for race and gender discrimination, and the second is for "promotion discrimination," both in violation of Title VII of the Civil Rights Act of 1964. Compl. at ¶¶ 54-66. The third is for violation of the Equal Pay Act for purportedly paying her less than similarly situated non-Guyanese Indian and male employees. *Id.* at ¶¶ 67-76. The fourth count is for retaliation in violation of Title VII of the Civil Rights Act of 1964. *Id.* at ¶¶ 77-85.

6

A hearing was conducted on June 21, 2016. *See* Hr'g Tr., June 21, 2016. Plaintiff,

defendant McRae, and a representative of defendant EmblemHealth with knowledge of the facts

at issue were present; they were examined as sworn witnesses. *See id.*

## IV.   Plaintiff's Claims

### A.   Salary and Promotions

According to plaintiff, "she was never promoted or approved for any job she applied for,

including one applied for in 2014." Opp'n Br. at 2. She specifically identifies and provides

documentation of only one job she applied for and did not receive, although she does claim that

she applied for others, without specifying which ones and without providing any evidence except

her own testimony. *Id.*; Heiferman Decl. at Ex. A (Emails concerning an interview and testing

and an information form, P-0150 – P-0155); Hr'g Tr., June 21, 2016, at 17:2-18:23.

Plaintiff testified at the hearing that the one position she applied for was "claims rate

specialist," a position that was one grade higher than the one she was in. According to plaintiff,

she interviewed well and received the impression that the interviewer liked her. The position

went to one of plaintiff's co-workers who, according to plaintiff, was in plaintiff's department

for less time than she was. Plaintiff was not present at her co-worker's interview; no evidence

concerning the reasons for the hiring decision was sought by the parties in discovery or provided

to the court. Hr'g Tr., June 21, 2016, at 19:25-21:12.

Identified for comparison purposes as a favored employee is one co-worker, Victoria

Werner, a white female who was promoted to Senior Specialist. Opp'n Br. at 1-2. No details of

her work were supplied. Her deposition was not taken. Hr'g Tr., June 21, 2016, at 24:7-10. No

other examples are provided of individuals who received a promotion denied to plaintiff.

Plaintiff alleges that she was discriminated against by being paid less, and receiving

fewer pay raises and bonuses than other similarly situated non-Guyanese Indian and male

7

employees. Compl. at ¶¶ 23, 55, 68, 70. She argues that her "salary and bonuses were always less than both Stephen Florio, a male coworker and Victoria Werner, a white-female coworker. Opp'n Br. at 1; Hr'g Tr., June 21, 2016, at 28:12-18. She also contends that her reviews were improperly revised downward, causing her to be denied raises and bonuses. Hr'g Tr., June 21, 2016, at 30:15-31:2. Defendants contend that salaries and bonuses were set by an independent committee. *Id.* at 29:10-15.

Plaintiff's salary and bonuses in relation to Mr. Florio's and Ms. Werner's is shown in the following chart agreed to by the parties:

| | 2008 | | 2009 | | 2010 | | 2011 | |
|---|---|---|---|---|---|---|---|---|
| | Yr End Salary | Bonus | Yr End Salary | Bonus | Yr End Salary | Bonus | Yr End Salary | Bonus |
| Natasha Hardial | 45,425 | - | - | 2,916 | 49,425 | - | 49,425 | - |
| Stephen Florio | 49,500 | - | 49,500 | 2,921 | 49,500 | - | 50,490 | - |
| Victoria Werner | 50,950 | - | - | 3,006 | 52,480 | 3,057 | 53,923 | 6,691 |

| | 2012 | | 2013 | | 2014 | | Term Date |
|---|---|---|---|---|---|---|---|
| | Yr End Salary | Bonus | Yr End Salary | Bonus | Yr End Salary | Bonus | |
| Natasha Hardial | 50,290 | 4,593 | 51,547 | 3,674 | - | 4,232 | 5/1/15 |
| Stephen Florio | 51,374 | 3,609 | - | 5,629 | - | 4,272 | |
| Victoria Werner | 54,867 | 6,167 | - | 7,996 | - | 5,966 | |

Heiferman Decl. at Ex. C (Salary Chart); Hr'g Tr., June 21, 2016, at 32:22-34:1. Dashes in the salary columns indicate that there was no change in salary from the prior year. Hr'g Tr., June 21, 2016, at 32:22-34:1.

8

**B.      Work Assignments**

Plaintiff suggests that her male co-workers received fewer cases than she did. Opp'n Br. at 2; Heiferman Decl. at Ex. A (E-mail, P-0064) ("How come none of the males on our team get member cases with the exception of Patino (which is rare)?"). She also complains that she and Ms. Werner were treated differently with respect to assigned work during their vacation periods: her contention is that no new cases were assigned to Ms. Werner during Ms. Werner's vacation, but new cases were assigned to her during her vacation. Opp'n Br. at 2. The record includes several e-mails from plaintiff to Tyrone Payne complaining about the unfair assignment of cases. Heiferman Decl. at Ex. A (E-mails, P-0011 – P-0021). In the group of e-mails there is one response from Mr. Payne explaining that the only cases given to plaintiff during her vacation were cases that plaintiff improperly failed to classify before her departure.

**C.      Comments Believed to be Derogatory by Plaintiff**

The complaint alleges that Ms. McRae "verbally picked" on plaintiff "on numerous occasions." Compl. at ¶ 49. Ms. McRae allegedly asked plaintiff "How is your hair so curly?," "are you sure both your parents are Indian?," and how did plaintiff's parents feel about plaintiff's daughter being "half black." *Id.* at ¶¶ 50-51. Plaintiff also accuses Ms. McRae of witnessing others making racially derogatory comments about plaintiff but taking no remedial action. *Id.* at ¶ 53.

The evidence supporting such comments comes solely from plaintiff's testimony. Plaintiff testified that at the start of her tenure at EmblemHealth, around 2007, during a social conversation in the bathroom, McRae asked plaintiff whether her hair was real or a weave, and how plaintiff's parents felt about plaintiff having a daughter who is half-black. Decl. of Michael C. Schmidt, Feb. 5, 2016, ECF No. 21 ("Schmidt Decl."), at Ex. D (June 16, 2015 Dep. Tr. of Natasha Hardia) at 50:7-51:5. Then, in June 2013, plaintiff testified that McRae commented

about the curliness of plaintiff's hair, and questioned whether plaintiff's parents were really Indian. *Id.* at 52:3-14. Plaintiff's conclusion that these statements were discriminatory was formed because someone had told plaintiff that McRae "does not like Indian people." *Id.* at 52:19-23. Plaintiff also testified that on at least two occasions she was called a "coolie" by another co-worker in front of McRae, and that McRae failed to take any corrective action. *Id.* at 53:14-54:18, 74:6-75:10; *see also* Hr'g Tr., June 21, 2016, at 31:23-32:21. No other untoward event is described by plaintiff during her years of employment.

## V.   Law

### A.   Summary Judgment Standard

Summary judgment is appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 25 (E.D.N.Y. 2013) (citing *Viola v. Phillips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994)). "The relevant governing law in each case determines which facts are material; '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor." *Id.* (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996)). Inquiries about discrimination often depend upon the state of a plaintiff's mind, requiring at least some consistent, objective evidence.

> In discrimination cases, the inquiry into whether the plaintiff's sex (or race, etc.) caused the conduct at issue often *requires an assessment of individuals' motivations and state of mind*, matters

> that call for a "sparing" use of the summary judgment device
> because of juries' special advantages over judges in this area.
>
> Nonetheless, an employment discrimination plaintiff faced with a
> properly supported summary judgment motion must do more than
> simply show that there is some metaphysical doubt as to the
> material facts. She must come forth with evidence sufficient to
> allow a reasonable jury to find in her favor. Moreover, *factual
> allegations that might otherwise defeat a motion for summary
> judgment will not be permitted to do so when they are made for the
> first time in the plaintiff's affidavit opposing summary judgment*
> and that affidavit contradicts her own prior deposition testimony.

*Brown v. Henderson*, 257 F.3d 246, 251-52 (2d Cir. 2001) (internal quotations and citations

omitted) (emphasis added).

### B.   Title VII

#### 1.   Disparate Treatment

Title VII protects individuals from discriminatory employment practices based on race,

color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2(a)(1)-(2). "*[I]ndividuals* are not

subject to liability under Title VII." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d

Cir. 2004) (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam))

(emphasis added); *see also Wynder v. McMahon*, 565 F. App'x 11, 12 (2d Cir. 2014)

("individuals are not liable in Title VII cases").

"The analytical framework for evaluating a claim of discrimination in violation of Title

VII is well established. [The court applies] the three-step burden shifting analysis enunciated in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d

668 (1973)." *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). According to the

*McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of

discrimination by showing that: (1) she is a member of a protected class; (2) she is competent to

perform the job or is performing her duties satisfactorily; (3) she suffered an adverse

11

employment action; and (4) the adverse employment action occurred under circumstances supporting an inference of discrimination based on her membership in the protected class. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

A plaintiff will only be considered to have been subjected to an adverse employment action if she endures a "materially adverse change" in the terms and conditions of employment. *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  For the actions complained of to be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation omitted).  "A material adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." *Parrish v. Sollecito*, 258 F. Supp. 2d 264, 269 (S.D.N.Y. 2003) (internal quotations omitted).  "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Sank v. City Univ. of N.Y.*, 219 F. Supp. 2d 497, 503 (S.D.N.Y. 2002) (internal quotation omitted).

Normal scheduling inconveniences, disciplinary notices, threats of disciplinary action and scrutiny of the employee's actions do not constitute adverse employment actions. *See, e.g., Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (holding that reprimands and threats of disciplinary action did not constitute adverse employment actions).

Once a plaintiff establishes a *prima facie* case of unlawful discrimination, the burden shifts to the defendant to supply a legitimate nondiscriminatory reason for the adverse action. *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005).  The burden is "one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citation omitted).  If the defendant meets its burden of production, the *McDonnell Douglas* framework drops out, and the plaintiff must show

that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (citation omitted). "[T]he defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (quoting *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002)); *see also Moorehead v. New York City Transit Auth.*, 157 F. App'x 338, 339 (2d Cir. 2005) (summary judgment proper where plaintiff "provided no evidence of pretext from which a rational factfinder could conclude that the [defendant]'s reasons for its promotional choices were pretexts for discrimination").

### 2. Retaliation

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a).

> In the context of a motion for summary judgment, the plaintiff must first demonstrate a *prima facie* case of retaliation, after which the defendant has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action. If the defendant meets its burden, the plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation.

*Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 443 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). A *prima facie* case of retaliation requires a showing of: "(1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision." *Id.*; *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 208-09 (2d Cir. 1990) (plaintiff must show that "[s]he

13

engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action").

To establish that a plaintiff's activity is protected under Title VII, a plaintiff "need not prove the merit of [her] underlying discrimination complaint, but only that [she] was acting under a good faith, reasonable belief that a violation existed." *Sumner*, 899 F.2d at 209 (citations omitted). The filing of formal charges of discrimination are protected in addition to "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Id.* (citations omitted). There must be a causal connection between the protected activity and the adverse employment action, which can be established indirectly with circumstantial evidence, as by showing that the protected activity "was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory animus." *Id.* (citing *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) and *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980)).

## C.    Limitations Period

"Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 90 (2d Cir. 2014) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)); *see also Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67, 68 (2d Cir. 2015) ("Under Title

14

VII, a charge must be filed with the Equal Employment Opportunity Commission either 180 or 300 days 'after the alleged unlawful employment practice occurred.'") (quoting 42 U.S.C. § 2000e–5(e)(1)). "In analyzing these limitations periods for discrimination claims, 'the proper focus is on the time of the *discriminatory act*.'" *Andrews*, 613 F. App'x at 68 (quoting *Chardon v. Fernandez,* 454 U.S. 6, 8 (1981)); *see also Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir. 2014) ("the limitations period begins to run when the plaintiff receives notice of the adverse action").

The limitations period may be tolled pursuant to the continuing violations doctrine. "Under that doctrine, if a plaintiff has experienced a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (quoting *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir. 1992)). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant,* 80 F.3d at 713. "[A]cts so 'isolated in time . . . from each other . . . [or] from the timely allegations[ ] as to break the asserted continuum of discrimination' will not suffice.'" *Fitzgerald*, 251 F.3d at 359 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). "[A] continuing violation may be found 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994) *abrogated in part on other grounds by Morgan*, 536 U.S. at 101).

**D.    Equal Pay Act**

The Equal Pay Act prohibits an employer from discriminating

> between employees on the basis of sex by paying wages to
> employees . . . at a rate less than the rate at which [the employer]
> pays wages to employees of the opposite sex . . . for equal work on
> jobs the performance of which requires equal skill, effort, and
> responsibility, and which are performed under similar working
> conditions.

29 U.S.C. § 206(d).  This statute prohibits discrimination on the basis of sex only; it does not

protect against racial discrimination.  *Belgrave v. City of N.Y.*, No. 95-CV-1507, 1999 WL

692034, at *24 (E.D.N.Y. Aug. 31, 1999), *aff'd sub nom. Belgrave v. N.Y. City*, 216 F.3d 1071

(2d Cir. 2000) ("claims under the Equal Pay Act asserting disparities based on national origin,

race, or any factor other than sex, must fail").

In the Second Circuit, Equal Pay Act claims are evaluated under a burden shifting test

similar to the *McDonnell Douglas* test.  First, plaintiff must establish a *prima facie* violation of

the statute by showing that "i) the employer pays different wages to employees of the opposite

sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and

responsibility; and iii) the jobs are performed under similar working conditions."  *Ryduchowski

v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (quoting *Belfi v. Prendergast*, 191

F.3d 129, 135 (2d Cir. 1999), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*,

524 U.S. 742 (1998)); *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) ("Under the

EPA a plaintiff must first establish that (1) the employer pays different wages to employees of

the opposite sex; (2) the employees perform equal work in positions requiring equal skill, effort,

and responsibility; and (3) the jobs are performed under similar working conditions.").  "With

regard to the second point, '[a] plaintiff need not demonstrate that her job is identical to a higher

paid position, but only must show that the two positions are substantially equal in skill, effort,

16

and responsibility.'" *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (quoting

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995), *abrogated on other grounds by*

*Burlington Indus., Inc.*, 524 U.S. at 742). "A plaintiff need *not* demonstrate an employer's intent

to discriminate to establish a prima facie case under the EPA." *Flaherty v. Massapequa Pub.*

*Sch.*, 752 F. Supp. 2d 286, 299 (E.D.N.Y. 2010), *aff'd*, 462 F. App'x 38 (2d Cir. 2012).

The second step of the test places the burden of persuasion on defendants "to show, by a

preponderance of the evidence, that the pay differential is attributable to '(i) a seniority system;

(ii) a merit system; (iii) a system which measures earnings by quantity or quality of production;

or (iv) a differential based on any other factor other than sex.'" *Flaherty*, 752 F. Supp. 2d at 299

(quoting 29 U.S.C. § 206(d)(1)). "[D]efendants face a heavy burden in establishing an

affirmative defense to an EPA claim." *Jamilik*, 362 F. App'x at 150. "Further, to successfully

establish the 'factor other than sex' defense, an employer must also demonstrate that it had a

legitimate business reason for implementing the gender-neutral factor that brought about the

wage differential." *Belfi*, 191 F.3d at 136.

Finally, the plaintiff may then "counter the employer's affirmative defense by producing

evidence that the reasons the defendant seeks to advance are actually a pretext for sex

discrimination." *Id.* "The appropriate inquiry to determine if the factor put forward is a pretext,

is whether the employer has use[d] the factor reasonably in light of the employer's stated

purpose as well as its other practices." *Id.* (citation omitted).

## VI.    Application of Law to Facts

### A.    Defendant Pansy McRae

The claims against the individual defendant are dismissed. Title VII claims do not lie

against an individual, requiring dismissal of the first, second, and fourth causes of actions with

respect to Ms. McRae. *Patterson*, 375 F.3d at 221; *Wynder*, 565 F. App'x at 12. Ms. McRae

cannot be liable for violating the Equal Pay Act because she is not plaintiff's employer. *See*
*Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528, 2014 WL 4773975, at *35 n.33
(E.D.N.Y. Sept. 24, 2014) (explaining that while an individual can be liable under the Equal Pay
Act, the individual must be shown to have some sort of operational control over the plaintiff's
employment).

Thus, the third cause of action must be dismissed with respect to her. In any event, no
evidentiary showing of Ms. McRae's discrimination against plaintiff has been provided.

### B.   Title VII Disparate Treatment Claims

The disparate treatment claim is dismissed because plaintiff has failed to establish a
*prima facie* case of discrimination. Specifically, plaintiff fails to clearly identify an adverse
action she suffered as a result of her membership in a class. Even if the combination of incidents
was enough to make out a *prima facie* case, as plaintiff contends, she fails to show that
defendants' explanations are a pretext for discrimination.

#### 1.   Plaintiff fails to make a *prima facie* case

The first two requirements for a *prima facie* case are not at issue here: plaintiff is a
member of a protected class and she was qualified to perform the job. She is unable to satisfy
the third and fourth requirements.

Plaintiff argues that the adverse actions she suffered included receiving poor reviews,
being placed on performance improvement plans, being "name called, asked inappropriate
questions, denied raises, bonuses and promotions." Opp'n Br. at 12.

With respect to the allegedly offensive comments made to plaintiff, they cannot serve as
a basis for her claim. Neither the two times that plaintiff recalls McRae asking potentially
offensive or inappropriate comments, nor the comments made by a non-supervisory co-worker,
constitute adverse actions. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556,

571 (2d Cir. 2011); *Bright v. Coca Cola Refreshements USA, Inc.*, No. 12-CV-234, 2014 WL 5587349, at *16 (E.D.N.Y. Nov. 3, 2014), *aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc.*, No. 14-CV-4465, 2015 WL 9261278 (2d Cir. Dec. 18, 2015) ("Being called names in the workplace does not rise to the level of a 'materially adverse' action."); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace.") (citation omitted). The language used can better be characterized as friendly co-employee chit-chat, whose dark purpose was supplied by plaintiff's mind, not her co-worker's.

With respect to job reviews and performance improvement plans, "a negative performance review, without more, does not represent an adverse employment action." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015); *but see James v. Countrywide Fin. Corp.*, No. 10-CV-4953, 2012 WL 6923758, at *6 (E.D.N.Y. Oct. 11, 2012), *report and recommendation adopted*, 2013 WL 249459 (E.D.N.Y. Jan. 23, 2013) (resolving a motion to dismiss, "the court finds, based on the *White* standard . . . that being placed on [a performance improvement plan] constitutes an adverse employment action because the threat of job termination from being placed on [a performance improvement plan] could "dissuade a reasonable worker from making or supporting a charge of discrimination") (citing *White*, 548 U.S. at 57). Because, as explained below, plaintiff did not suffer additional adverse actions that can be attributed to racial or gender discrimination, her repeatedly bad performance reviews and placement on performance improvement plans cannot constitute adverse actions for the Title VII claim in the context of the present case.

Plaintiff argues that she suffered a host of adverse impacts, such as a lack of raises, bonuses and promotions. Opp'n Br. at 12-13. This claim is belied by the objective evidence.

According to the salary chart the parties agreed upon, plaintiff's salary was always comparable to – and often more than – other G&A Specialists.  For example, the range of salaries at the end of 2008 appears to have been $45,000 to $51,950; plaintiff's salary was $49,425, towards the high end of the range.  In 2013, the range of salaries appears to have been $40,000 to $55,000; plaintiff's salary was $51,547, again at the high end of the range.  Heiferman Decl. at Ex. C (Salary Chart).  In her answer to an interrogatory, plaintiff stated that she should have received a 6% raise each year she worked at EmblemHealth, giving her a salary in 2013 of $69,000. Schmidt Decl. at Ex. C (Interrogatory Responses) at No. 9.  The salary chart demonstrates that the salary to which plaintiff believes she was entitled would give her more than $10,000 higher than any other employee in the department.

Plaintiff identifies Stephen Florio and Victoria Werner as individuals who were paid more money than she was.  The salary chart shows that Stephen Florio made $51,374 in 2012, less than $1,000 more than plaintiff did that year.  It further reveals that plaintiff earned more than Mr. Florio in 2013 and 2014, and that she had a larger percentage increase in salary between 2008 and 2014 than he did.  Heiferman Decl. at Ex. C (Salary Chart).  This evidence flatly contradicts plaintiff's argument.

With respect to Victoria Werner, her 2012 salary of $54,867 was approximately $4,600 more than plaintiff's salary for that year.  *See id.*  Plaintiff presents no evidence, as it is her burden to do, concerning Ms. Werner's qualifications, performance reviews, or EmblemHealth's reasons for paying Ms. Werner more money.  If Victoria Werner were promoted to another position – as plaintiff alleges as the basis for her promotion discrimination claim – then it would be expected that Werner would properly earn more money.  *See* Opp'n Br. at 2-3.

20

The chart also shows examples of individuals who were paid less than plaintiff in 2012, further undermining her claim. Heiferman Decl. at Ex. C (Salary Chart).

Plaintiff's argument that she was denied raises and bonuses is undermined by the salary chart. Plaintiff received bonuses in the same years as Stephen Florio, one of her proposed comparators. In 2012, plaintiff's bonus was nearly $1,000 greater than the bonus Mr. Florio received. The salary chart shows that other individuals who do not appear to be female did not receive bonuses or raises as large as plaintiff's. *Id.*

The chart does not show any reason for the differences in salary – such as years of experience; on its face it does not support a claim that plaintiff was paid less based on her race or gender.

Plaintiff's argument that she was improperly denied promotions is unsupported by the evidence. She identifies and provides evidence of only a single job she applied for and did not receive. Opp'n Br. at 1-2. She concludes that she was improperly denied the promotion on the ground that she thought the interview went well, the interviewer indicated that he or she would be asking plaintiff's supervisor about giving her the promotion, and that someone with less experience in the G&A department ultimately received the promotion. Hr'g Tr., June 21, 2016, at 19:25-21:12. Plaintiff's conclusion is built on layers of unsupported assumptions and insinuations. She provided no evidence about the qualifications of the person who was promoted, what happened at that person's interview, or why the hiring decision was ultimately made. *See id.* at 21:13-16.

Similarly, she only identifies one comparator – Victoria Werner – who received a promotion. *Id.* Plaintiff contends that "although she was doing similar work to Victoria Werner, often providing back up assistance to Ms. Werner . . . Plaintiff was never promoted at all."

21

Opp'n Br. at 17.  Plaintiff presents no evidence about how she was equally or more qualified than Ms. Werner other than asserting that she acted as Ms. Werner's back-up.  *See, e.g.*, Hr'g Tr., June 21, 2016, at 24:16-22.  McRae testified that Ms. Werner's performance scores were higher than plaintiff's, and she was thus qualified for the promotion she received, while plaintiff was not as qualified.  *See id.* at 21:17-22:17.  Plaintiff's own assertion that she was discriminatorily denied promotions comes without supporting evidence of the qualifications and quality of work of the competitor employee.  That a white female received a position that plaintiff was not proved better qualified for is insufficient to withstand summary judgment.

The resignation letters from other individuals which plaintiff submitted with her opposition show that other employees may have had similar frustrations on the job applying for promotion.  *See* Heiferman Decl. at Ex. C (July 12, 2007 Memo from Jacquelyn Carrera to Fred Blickman re: Resignation, D0369-D0372).  This evidence demonstrates that the problem plaintiff complains of was widespread, not restricted to plaintiff, and not based on actionable discrimination.

Because the specific actions, and inactions, about which plaintiff complains are insufficient to make out a *prima facie* case, it is unnecessary to address defendants' statute of limitations argument.

### 2. Defendants Offer a Non-Discriminatory Rationale that Plaintiff Cannot Refute

Even if the totality of circumstances were sufficient to make out a *prima facie* case for discrimination as plaintiff alleges, defendants have offered a non-discriminatory rationale for the bonuses and raises that were (or, as plaintiff argues, were not) awarded.  Bonuses were awarded by a committee based on the quality of work, as reflected in written reviews.  Hr'g Tr., June 21, 2016, at 29:16-23.  Defendants submitted plaintiff's mid-year and year-end reviews, as well as

documentation evidencing formal warnings she received and performance improvement plans she was placed on; this documentation would have also been before the bonus committee. *See* Performance Reviews; McCray-Hyppolite Decl., at Ex. B (Mar. 18, 2009 Memorandum providing formal warning to plaintiff for tardiness and documenting problems with the quality of her work), Ex. C (May 18, 2009 Memorandum providing formal warning to plaintiff for quality of work), Ex. D (June 17, 2009 Notice to plaintiff that she was being suspended for two days due to continued tardiness), Ex. G (Sept. 29, 2014 Interoffice Memorandum to plaintiff providing formal warning for quality of work). This evidence satisfies defendants' burden on the second step of the *McDonnell Douglas* framework.

For the third step of the *McDonnell Douglas* framework, plaintiff argues that the totality of circumstances raise an issue of fact as to whether the performance reviews – upon which bonuses were based – were merely pretext for McRae's discrimination. Hr'g Tr., June 21, 2016, at 28:24-29:9, 30:15-31:10. There are two problems with this argument.

First, plaintiff admitted in her deposition that at times her performance was poor. *See* Schmidt Decl. at Ex. D (June 16, 2015 Dep. Tr. of Natasha Hardial), at 150:12-151:11. This admission undercuts her argument that the poor performance reviews were fabricated to cover-up improper discrimination.

Second, it is plaintiff's burden to do more than just ask the court to infer or assume bias based on the totality of circumstances. Plaintiff must present evidence that supports her arguments. *Cf. D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 196 (2d Cir. 2007) (plaintiff satisfied the third step of the *McDonnell Douglas* framework by pointing to specific factual evidence that contradicted the non-discriminatory reasons defendant had offered). She has not presented any such evidence.

23

Thus, even if plaintiff could make out a *prima facie* case, she has not satisfied her burden under the third step of the *McDonnell Douglas* framework. Summary judgment is appropriate on this claim.

### C.    Title VII Retaliation Claim

The sole basis for plaintiff's retaliation claim is that she was improperly assigned cases while she was on vacation. Opp'n Br. at 18. Plaintiff argues that while she did not make her 2015 termination a basis for her claim, "it clearly can be considered when analyzing [her] claim." *Id.* She provides no authority for this proposition. Because plaintiff did not allege her termination as an instance of retaliation in the complaint, it will not be relied upon as part of her claim.

Plaintiff's contention that she unfairly received more work following the filing of her EEOC complaint is insufficient to make out a *prima facie* case of discrimination. An increase in workload "may be an adverse action for the purposes of a retaliation claim if the increase is heavily disproportionate to those similarly situated." *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 196 (E.D.N.Y. 2015) (citing *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)). There is no evidence of a causal connection between the purported improper assignment of cases during plaintiff's vacation period and her protected activity. There is no evidence that her assignments were disproportionate to others in her department.

First, plaintiff's e-mail to Tyrone Payne indicates that she believed the unfair assignments extended to all females, not just her, showing that she did not believe the assignments were in retaliation for her EEOC complaint. Heiferman Decl. at Ex. A (Nov. 25, 2013 e-mail, P-0064). Second, Mr. Payne explains in response to plaintiff's complaint that she was only assigned cases that had previously been assigned to her and should have been classified before plaintiff left for vacation. *Id.* (Nov. 13, 2013 e-mail, P-0019). Third, plaintiff's complaint about work

24

assignments dates back to 2010, long before her EEOC complaint. *See* Heiferman Decl. at Ex. A

(Memo re: Performance Improvement Plan 2010, P-0059). Plaintiff has presented no evidence

showing a link between the EEOC complaint and plaintiff's purportedly unfair assignment of

work.

Plaintiff has failed to make out a *prima facie* case on her retaliation claim.

**D.     Equal Pay Act Claim**

Plaintiff has not established a *prima facie* case of an Equal Pay Act violation.

She contends that the Equal Pay Act was violated because her "salary and bonuses were

always less than . . . Stephen Florio, a male coworker, despite being similarly situated" and that

she was always given more work than her male counterparts. Opp'n Br. at 17. In her deposition

testimony she identified four individuals who were similarly situated but whom she thought were

paid more: Victoria Werner, Teresa Frye, Stephen Florio, and Stephen Spitino. Schmidt Decl. at

Ex. D (June 16, 2015 Hardial Dep. Tr.), at 10:7-12:9. Victoria Werner and Teresa Frye are

female and cannot serve as comparators for an Equal Pay Act claim. Neither plaintiff nor

defendants submitted any evidence about Stephen Spitino's salary – he is not on the salary chart

provided by the parties.

With respect to Stephen Florio, plaintiff has failed to make out a *prima facie* case: she

presents no evidence about Mr. Florio's job responsibilities, skills, or working conditions.

Plaintiff simply asserts that he is a suitable comparator. *See, e.g.*, Hr'g Tr., June 21, 2016, at

28:17-19.

The only evidence in the record concerning Mr. Florio – the salary chart – shows that

plaintiff received bonuses at the same time as Mr. Florio and that, in one year, plaintiff's bonus

*exceeded* that of Mr. Florio. It also shows that in 2013 and 2014, her salary was *higher* than his.

Heiferman Decl. at Ex. C (Salary Chart).

25

In addition to this comparison, the salary chart reveals that all of the employees in the department were paid different amounts. Plaintiff was paid more than some males.

It is unclear why there is such a disparity in payment. But simply because plaintiff was not the highest paid or equal to the highest paid in a group where many people of both genders were paid many different amounts does not create liability under a statute designed to protect against sex discrimination. *See id.*

## VII.    Conclusion

The problem, if any, with defendants' employment practices in this case seems to be poor management – not discrimination. Plaintiff's complaints are consistent with those of others who appear to have resigned previously: too much work, understaffing, and poor supervision.

The evidence does not support a finding that plaintiff was discriminated against because of her race or gender. She was amongst the highest paid employees in her department, notwithstanding significant and repeated adequate performance failures. Defendants' motion for summary judgment is granted. No costs or disbursements are awarded.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: July 7, 2016
     Brooklyn, New York

26